IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JANET SCHMELZER | § |
| | § |
| VS. | § CIVIL ACTION NO. 4:03-CV-354-Y |
| | § |
| B.J. ALEXANDER, et al. | § |

<u>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Pending before the Court is Defendants' Motion for Summary Judgment in Response to Plaintiff's Third Amended Complaint [doc. # 55-1], filed March 1, 2004. Having carefully reviewed the motion,[1] response, and reply, the Court finds that the motion should be GRANTED.

I. BACKGROUND

Plaintiff Janet Schmelzer is a faculty member at defendant Tarleton State University ("Tarleton State") in Stephenville, Texas. In December 1994 Schmelzer filed a lawsuit in this Court against Tarleton State and certain individual defendants[2] alleging free-speech, free-association, and due-process violations; sex

---

[1] While Defendants' motion is titled "Defendants' Motion for Summary Judgment in Response to Plaintiff's Third Amended Complaint," all internal references to Plaintiff's complaint refer to Plaintiff's Second Amended Complaint. For purposes of reviewing Defendants' motion, the Court will treat references to Plaintiff's Second Amended Complaint in Defendants' motion as a typographical error, and will consider the motion to be in response to Plaintiff's Third Amended Complaint, as indicated by the motion's title.

[2] The individual defendants in Schmelzer's 1994 action were Dennis McCabe, Freddy Koestler, Christopher Guthrie, and Robert Fain. Only Tartleton State, Dennis McCabe, and Christopher Guthrie are defendants in the present suit before this Court.

1

discrimination; civil conspiracy; breach of contract; and tortious interference.  That suit was settled out of court in February 1996.  On November 18, 2002, Schmelzer filed the present action in this Court against Tarleton State and several Tarleton State administrators[3] in their individual capacities, alleging violations of: (1) Schmelzer's First Amendment rights, enforceable through 42 U.S.C. § 1983 ("§ 1983"); (2) Title VII of the 1964 Civil Rights Act; and (3) Title IX, 34 C.F.R. § 1007(b).  Schmelzer alleges that Defendants have engaged in a series of retaliatory acts in response to Schmelzer's earlier lawsuit and her vocalization of Tarleton State's alleged discriminatory practices.  On March 1, 2004, Defendants moved for summary judgment on all of Schmelzer's claims.[4]  In addition, the individual defendants move for summary judgment on the basis of qualified immunity.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  An issue is considered "genuine" if "it is real and substantial as opposed to merely formal, pretended, or a sham."

---

[3] The individual defendants in Schmelzer's present suit are B.J. Alexander, Chancellor Howard Graves, Christopher Guthrie, Lamar Johanson, Dennis McCabe, Gary Peer, Michael Pierce, Don Zelman, and Ruben Walter.  Only Dennis McCabe and Christopher Guthrie were defendants in Schmelzer's prior suit.

[4] While Defendants' motion was filed by all of the named defendants, most of the arguments for summary judgment concern only the individual defendants.

*Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citing *Wilkinson v. Powell*, 149 F.2d 335, 337 (5th Cir. 1945)). Facts are considered "material" if they "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether there are any genuine issues of material fact, the Court must first consult the applicable substantive law to ascertain what factual issues are material. *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990). Next, the Court must review the evidence on those issues, viewing the facts in the light most favorable to the nonmoving party. *Id.*; *Newell v. Oxford Mgmt. Inc.*, 912 F.2d 793, 795 (5th Cir. 1990); *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir. 1989).

In making its determination on the motion, the Court must look at the full record including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *See* FED. R. CIV. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Rule 56, however, "does not impose on the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). Thus, parties should "identify specific evidence in the record, and . . . articulate" precisely how that evidence supports their claims. *Forsyth v. Barr*, 19 F.3d 1527, 1536 (5th Cir. 1994). Further, the Court's function is not to weigh the evidence and determine the

3

truth of the matter but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

To prevail on a motion for summary judgment, the moving party has the initial burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). A defendant moving for summary judgment may submit evidence that negates a material element of the plaintiff's claim or show that there is no evidence to support an essential element of the plaintiff's claim. *See Celotex Corp.*, 477 U.S. at 322-24; *Crescent Towing and Salvage Co. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994); *Lavespere*, 910 F.2d at 178.

To negate a material element of the plaintiff's claim, the defendant must negate an element that would affect the outcome of the action. *See Anderson*, 477 U.S. at 247. If the defendant moves for summary judgment alleging no evidence to support an essential element of the plaintiff's claim, the defendant need not produce evidence showing the absence of a genuine issue of fact on that essential element. Rather, the defendant need only show that the plaintiff, who bears the burden of proof, has adduced no evidence to support an essential element of his case. *See Celotex*, 477 U.S. at 325; *Teply v. Mobil Oil Corp.*, 859 F.2d 375, 379 (5th Cir. 1988).

When the moving party has carried its summary-judgment burden, the respondent must go beyond the pleadings and by his own evidence

4

set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e). This burden is not satisfied by creating some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50.

III. ANALYSIS

A. Statute of Limitations for § 1983 Actions

To support her retaliation claims, Schmelzer points to numerous employment-related actions taken by Defendants beginning as early as 1996. Defendants argue that many of these incidents fall outside of the statute of limitations for § 1983 actions. Statute-of-limitations periods for § 1983 claims are governed by state law. *Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir. 1993) (citing *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989)). The applicable period under Texas law for § 1983 claims is the two-year personal-injury limitations period. *Id.; see also Wilson v. Garcia*, 471 U.S. 261, 276-280 (1985). In determining when a cause of action accrues, however, the court must apply federal law. *Pete*, 8 F.3d at 217. "The federal standard provides that a cause of action under section 1983 accrues 'when the plaintiff knows or

5

has reason to know of the injury which is the basis of the action.'" *Id.* (quoting *Burrell*, 883 F.2d at 418). The limitations period for Schmelzer's claims would therefore terminate two years after she knew or had reason to know of the injuries she sustained.

The Court concludes that Schmelzer knew or had reason to know of all of the allegedly retaliatory acts that she suffered and, therefore, claims based upon any acts that occurred prior to November 18, 2000,[5] would be barred by the statute of limitations. The grievances cited by Schmelzer include lesser pay increases than awarded to her colleagues, changes to her schedule, and poor teaching evaluations.[6] Schmelzer would be aware of such injuries at the time of their occurrence, and as such Schmelzer cannot

---

[5] Schmelzer filed her present suit in this Court on November 18, 2002. Since the statute of limitations for § 1983 actions is a two-year period, only those incidents occurring after November 18, 2000, would fall within the statute of limitations.

[6] Defendants' allegedly retaliatory acts against Schmelzer include the following: (1) pay increases that were not commensurate with those of her fellow professors; (2) the denial of a promotion; (3) changes to Schmelzer's teaching schedule, either in the classes she was teaching or in the time her classes were offered, without consulting with her; (4) failure to include a recommended salary increase in Schmelzer's paycheck (when brought to defendant B.J. Alexander's attention, Alexander stated that it was merely an oversight and fixed the problem); (5) the administration's forcing Schmelzer to use a specific textbook for her classes; (6) the denial of Schmelzer's request of three- or four-day work weeks, despite other professors' having such a schedule; (7) the imposition of a minimum enrollment for Schmelzer's classes although Schmelzer's fellow professors were not subject to such a requirement; (8) the denials of Schmelzer's Merit Plus salary increase; (9) evaluations of Schmelzer by defendant Michael Pierce where he was critical of her class enrollments, publications, and school involvement; (10) defendant Dennis McCabe's failure to mention Schmelzer's activities when discussing the faculty's activities and achievements at a faculty meeting; (11) Schmelzer's status as the most-senior professor without an administrative title; (12) the refusal to appoint Schmelzer to the curriculum committee; (13) inaccurate teaching evaluations; (14) the denial of Schmelzer's requested teaching schedule, despite the approval of Schmelzer's colleagues' requested teaching schedules; and (15) criticism of Schmelzer's attendance of professional meetings. (Pl.'s Third Am. Compl.)

successfully argue that her cause of action for incidents arising prior to November 18, 2000, did not begin to accrue at the moment that each incident occurred. Unless the limitations period was tolled for some reason, Schmelzer's § 1983 claims based on incidents occurring before November 18, 2000, would therefore be time barred.

Schmelzer argues that "the intentional retaliation against [her] is daily and continuous," that each paycheck is a separate retaliation, and that her retirement package is damaged monetarily every single day. (Pl.'s Resp. to Defs.' Mot. for Summ. J. at 5.) Though Schmelzer cites no authority to support her argument, the Court assumes that she is attempting to invoke the continuing-violation doctrine.[7] The continuing-violation doctrine "is equitable in nature and extends the limitations period on otherwise

---

[7] The continuing-violation doctrine is different from the continuing-tort doctrine, which only applies to torts. *Edwards v. Galveston-Texas City Pilots*, 203 F. Supp. 2d 759, 766-67 (S.D. Tex. 2002). While § 1983 claims are subject to the Texas statute of limitations for personal-injury actions, "[i]n deciding when the statute of limitations commences to run under . . . § 1983, [the Fifth Circuit] look[s] to . . . Title VII cases." *Perez v. Laredo Junior College*, 706 F.2d 731, 733 (5th Cir. 1983). The continuing-violation doctrine applies to Title VII cases. *See id.; see also McGregor*, 3 F.3d at 866, n. 27. Furthermore, the continuing-violation doctrine has been applied in § 1983 cases. *See Perez*, 706 F.2d at 733; *Detro v. Roemer*, 739 F. Supp. 303, 305 (E.D. La. 1990) (concluding that each constitutional deprivation, forming the basis of the § 1983 claims, was a separate wrong and did not comprise a continuing violation), *cert. denied*, 116 L. Ed. 2d 248, 112 S. Ct. 305 (1991); *Jackson v. Galan*, 868 F.2d 165, 168 (5th Cir. 1989)). The Court therefore concludes that the continuing-violation doctrine, rather than the continuing-tort doctrine, applies to the present matter.
 The Court notes that "courts, including [the Fifth Circuit], are wary to use the continuing violation doctrine to save claims outside the area of Title VII discrimination cases." *McGregor* 3 F.3d at 866, no. 27. In the present case, Schmelzer seeks damages pursuant to Title VII, and her § 1983 claim is premised upon alleged retaliatory acts taken against Schmelzer in her employment. This case would therefore likely fall "in the area of Title VII discrimination cases." *See Perez*, 706 F.2d at 731 (school professor sued university under § 1983 for retaliation and violation of First Amendment rights).

7

time barred claims . . . when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004) (citing *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003); *Huckabay v. Moore*, 142 F.3d 233, 238-39 (5th Cir. 1998)).

Schmelzer, however, completely fails to brief this argument-- there is no indication of how the events listed in her complaint form an organized scheme leading to the present violation,[8] no discussion of how the incidents alleged in her complaint qualify as a series of related events as opposed to discrete, adverse discriminatory actions,[9] and no citation to supporting case law to strengthen her argument. In short, Schmelzer makes a vague suggestion that the continuing-violation doctrine applies, and then fails to adequately brief the issue. Consequently, the Court need not address it, and may consider the issue waived. *See Manning v. Chevron Chem. Co. LLC*, 332 F.3d 874, 881, n.3 (5th Cir. 2003)(concluding that the continuing-violation doctrine suggestion made by the plaintiff was waived when the plaintiff failed to

---

[8] When making an argument that the continuing-violation doctrine applies, a plaintiff "must show an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action." *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 (5th Cir. 2001) (quoting *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998)); *see also Hayes v. MBNA Tech., Inc.*, Civil Action No. 3:03-CV-1766-D, 2004 U.S. Dist. LEXIS 10628, at *34 (N.D. Tex. June 9, 2004) (Fitzwater, J.).

[9] "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004) (citing *Nat.'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). "Thus, each discriminatory act starts a new clock for filing charges alleging that act." *Id.*

adequately brief the issue)(citing *Kane Enters. v. Macgregor Inc.*, 322 F.3d 371, 376 n.3 (5th Cir. 2003)).[10] The Court therefore concludes that the statute of limitations bars Schmelzer's claims involving those incidents occurring prior to November 18, 2000.

The following individual defendants are therefore entitled to summary judgment, since Schmelzer fails to allege any actions by

---

[10] The Court notes that, were such an inquiry to take place, it is unlikely that Schmelzer's claims would be saved. The continuing-violation doctrine does not automatically apply to every claim of continuing workplace harassment. *Webb v. Cardiothoracic Surgery Associates of North Texas*, 139 F.3d 532, 538 (5th Cir. 1998) (citing *Messer v. Meno*, 130 F.3d 130, 134-35 (5th Cir. 1997)); *see also Langley v. DOI*, CIVIL ACTION NO: 99-2653, 2001 U.S. Dist. LEXIS 5216, at *28-29 (E.D. La. Apr. 17, 2001. Rather, a plaintiff must show an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action. *Celestine*, 266 F.3d at 352 (quoting *Huckabay*, 142 F.3d at 239); *see also Hayes*, 2004 U.S. Dist. LEXIS 10628, at *34 (Fitzwater, J.). A one-time employment event, including the failure to hire, promote, or train and dismissals or demotions, is "the sort of discrete and salient event that should put the employee on notice that a cause of action has accrued." *Celestine*, 266 F.3d at 352 (quoting *Huckabay*, 142 F.3d at 240). Thus, "claims based on discrete acts are timely only where such acts occurred within the limitations period." *Pegram*, 361 F.3d at 279-80.
   Most of the incidents listed as retaliatory in Schmelzer's complaint involve her salary, Tarleton State's failure to promote her, changes to her teaching schedule, and Schmelzer's status within Tartleton State. *See supra* note 6 and accompanying text. These actions all qualify as discrete acts. *See Morgan*, 536 U.S. at 114; *Pegram*, 361 F.3d at 279-80; *Huckabay*, 142 F.3d at 240 (holding that demotion and a failure to promote are isolated occurrences); *Edwards*, 203 F. Supp. 2d at 766-67; *Perez*, 706 F.2d at 733-34 (finding that plaintiff's claim that additional pay was denied to plaintiff in retaliation for his exercise of First Amendment rights stated a single wrongful act); *Del. State College v. Ricks*, 449 U.S. 250, 266 (1980) (finding that denial of tenure to professor did not constitute a continuing violation). Schmelzer's claims based on Defendants' discreet actions occurring prior to November 18, 2000, would therefore not qualify for preservation under the continuing-violation doctrine.
   Furthermore, Schmelzer would be unable to support her argument that the damage to her retirement package somehow tolls the running of the statute of limitations. Courts have consistently held that, where a violation falls outside of the limitations period but effects from that violation fall within the limitations period or will continue to occur, the continuing-violation doctrine does not apply to save the claim. *See McGregor*, 3 F.3d at 867; *Celestine*, 266 F.3d at 344 (quoting *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999)); *Ricks*, 449 U.S. at 266; *Rollins v. Lewis*, No. 3:99-CV-0098-BF, 2002 U.S. Dist. LEXIS 3246, at *11 (N.D. Tex. Feb. 26, 2002) (Stickney, J.) (stating that "continuous unlawful acts from a single violation, followed by continuing consequences" does not qualify for the continuing-violation doctrine).

them occurring after November 18, 2000: Howard Graves, Gary Peer, Christopher Guthrie, Lamar Johanson, and Rueben Walter. Tarleton State is also entitled to summary judgment as to Schmelzer's claims occurring prior to November 18, 2000.

B. Title VII Claims

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race." 42 U.S.C. § 2000e-2(a)(1) (2004). While Title VII's definition of an "employer" includes "any agent" of an employer, the Fifth Circuit does not interpret Title VII as imposing individual liability on such agents. *Indest v. Freeman Decorating*, 164 F.3d 258, 262 (5th Cir. 1999) (citing *Pfau v. Reed*, 125 F.3d 927, 935-36 (5th Cir. 1997)); *see also Goins v. Hitchcock I.S.D.*, 191 F. Supp. 2d 860, 869 (S.D. Tex. 2002). Congress's inclusion of "agents" within the definition of "employer" was done merely to incorporate *respondeat superior* liability into Title VII and does not render employees individually liable for their underlying actions in Title VII suits. *Indest*, 164 F.3d at 262 (citing *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993)). Claims made against employees in Title VII suits are therefore

treated as suits against the employer itself. *Id.* Furthermore, it is well established that "a party may not maintain a suit against an employer and its agent under Title VII." *Id.* Schmelzer brought Title VII claims against both Tartleton State and the individual defendants. Consequently, because Schmelzer is suing the individual defendants in their individual capacities, and because there is no individual liability under Title VII, the individual defendants are entitled to summary judgment on Schmelzer's Title VII claims.

C. Title IX Claims

Schmelzer also seeks damages for Defendants' alleged violations of Title IX, 34 C.F.R. § 100.7(e). Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (2005). Title IX does not include an explicit creation of private rights of action for the victims of discrimination in federally funded educational institutes. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 249 (5th Cir. 1997). The Fifth Circuit, however, recognizes that 34 C.F.R. § 100.7(e) "implies a private right of action for retaliation, narrowly tailored to the claims of employees who suffer unlawful retaliation solely as a consequence

11

of complaints alleging noncompliance with the substantive provisions of Title IX." *Id.* at 254 (citing *Cannon v. University of Chicago*, 441 U.S. 677, 717 (1979)).

Although employees of an educational institution enjoy a private right of action for retaliation, "the implied private right of action [is] confined to actions against the institution." *Beasley v. St. Tammany Parish Sch. Bd.*, CIVIL ACTION NO. 96-2333, 1997 U.S. Dist. LEXIS 9844, at *10 (E.D. La. July 9, 1997) (citing *Doe v. Petaluma City Sch. Dist.*, 830 F. Supp. 1560, 1576-77 (N.D. Cal. 1993) (concluding that Title IX does not provide a cause of action against individuals because of its enforcement provision and similarity to Title VII); *Does v. Convington County Sch. Bd. of Educ.*, 930 F. Supp. 554, 566 (M.D. Ala. 1996) (relying on *Petaluma*); *Bowers v. Baylor Univ.*, 862 F. Supp. 142, 146 (W.D. Tex. 1994) (same)); *see also Smith v. Metropolitan Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1019-20 (7th Cir. 1997). Furthermore, "the majority of courts that have considered the issue have ruled that Title IX does not permit suits against individuals." *Goins*, 191 F. Supp. 2d at 869 (citing *Boulahanis v. Bd. of Regents*, 198 F.3d 633, 640 (7th Cir. 1999); *Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 611 (8th Cir. 1999); *Smith v. Metro.Sch. Dist. v. Perry Township*, 128 F.3d 1014, 1019 (7th Cir. 1997); *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 901 (1st Cir. 1988). Since Title IX does not provide for individual liability, the individual defendants are

also entitled to summary judgment on Schmelzer's Title IX claims.

D. Qualified Immunity

Schmelzer's remaining claims against the individual defendants are her § 1983 claims of retaliation for the exercise of her First Amendment rights. The individual defendants seek summary judgment on these claims on the basis that they are entitled to qualified immunity. To the extent Schmelzer seeks money damages directly from the individual defendants for their actions taken under color of state law, the individual defendants may invoke their right to qualified immunity. *See Hafer v. Melo*, 502 U.S. 21, 26 (1991). Public officials performing discretionary functions enjoy immunity from suits for damages, provided their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v.* Fitzgerald, 457 U.S. 800, 818 (1982). Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved at the earliest possible stage in the litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

When this Court is called upon to confer qualified immunity upon a government official accused of violating a federal constitutional or statutory right, the Fifth Circuit requires the Court first to employ a three-party inquiry. *See Conroe Creosoting Co. v. Montgomery Cty., Tex.*, 249 F.3d 337, 340 (5th Cir. 2001).

13

Initially, the Court must determine whether the complainant has actually alleged the violation of a federal constitutional or statutory right.  *See id.; Wilson v. Layne*, 526 U.S. 603, 609 (1999).  If the Court determines that he has, the Court must then decide whether, at the time of the alleged violation, that right was so clearly established that a reasonable government official in the defendant's situation would have understood that his conduct violated that right.[11]  *See Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993).  No prior case directly on point need be extant but, again, the official must have been able to understand that what he did violated a federal right.  *See Anderson v. Creighton*, 483 U.S. at 640; *Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075, 1079 (5th Cir. 1995).  Finally, the Court must "determine whether the record indicates that the violation occurred, or gives rise to a genuine issue of material fact as to whether the defendant actually engaged in the conduct that violated the clearly established right."  *See Conroe Creosoting Co.*, 249 F.3d at 340; *Morris v. Dearborne*, 181 F.3d 657, 666 (5th Cir. 1999).

The Court will first examine whether Schmelzer has actually

---

[11] This second part of the three-part inquiry is often condensed into "objective reasonableness." Many cases, then, ask whether the accused government official's conduct was objectively reasonable. *See, e.g., Conroe Creosoting Co.*, 249 F.3d at 340. *Anderson* seems to supply some intermediate language between the full and the condensed expression of this second part of the three-part inquiry: "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635 (1987).

alleged a violation of § 1983.  A plaintiff seeking to recover on a § 1983 retaliation claim for the exercise of her First Amendment rights must prove that: (1) the defendant was acting under color of state law; (2) the plaintiff's speech activities were protected under the First Amendment; and (3) the plaintiff's exercise of her protected right was a substantial or motivating factor in the defendant's actions.  *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing *Pierce v. Texas Dep't. of Crim. Justice Inst. Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994); *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  This standard requires the Court to evaluate whether:  (1) the plaintiff suffered an adverse employment action; (2) the speech in question was a matter of public concern; (3) the plaintiff's interest in commenting on matters of public concern outweighs her employer's interest in efficiency; and (4) the speech motivated the adverse employment action."  *Serna v. City of San Antonio*, 244 F.3d 479, 482 (5th Cir. 2001) (citing *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999), *cert. denied*, 528 U.S. 1022, 120 S. Ct. 533, 145 L. Ed. 2d 413 (1999)).

     Even assuming that Schmelzer is able to establish the other elements necessary for her § 1983 claims, Schmelzer is unable to demonstrate that her speech activities were protected because she cannot show that she suffered an adverse employment action. Schmelzer alleges that the following actions taken by the

15

individual defendants after November 18, 2000, were retaliatory: (1) defendant B.J. Alexander informed Schmelzer that she was ineligible for a merit-plus salary increase; (2) defendant Dennis McCabe failed to give Schmelzer a letter that she requested in an open-records request because McCabe believed he had already complied with the request; (3) defendant Michael Pierce forced Schmelzer to use a particular textbook for her classes and defendant Don Zelman agreed with Pierce's action; (4) Pierce conducted Schmelzer's annual performance reviews, in which he noted that her work was solid but he "undervalued [her] professional service," (Pl.'s Third Am. Compl. at 30.); (5) Zelman did not overturn one of Pierce's evaluations of Schmelzer; (6) Zelman made negative comments about Schmelzer during a committee meeting; (7) Schmelzer's status as the most senior professor without an administrative title; (8) Schmelzer's salary and retirement payments were less than her colleagues'; (9) Pierce and Zelman prevented Schmelzer from attending professional meetings; (10) Pierce told Schmelzer to teach a class at a different campus; and (11) Zelman informed campus police that he had found a bag of marijuana next to Schmelzer's car in the parking lot. (Pl.'s Third Am. Compl. at 28-34.)

    None of these incidents qualifies as adverse employment actions. Adverse employment actions include transfers, discharges, demotions, refusals to hire, refusals to promote, and reprimands.

*Sharp v. City of Houston*, 164 F.3d 923 (5th Cir. 1999); *see also Harrington*, 188 F.3d at 366.[12] While discharges, demotions, refusals to hire, refusals to promote, and reprimands qualify as adverse employment actions, "'decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures,' [although] extremely important to the person who has dedicated his or her life to teaching, do not." *Harrington*, 188 F.3d at 365 (citation omitted); *see also Goins*, 191 F. Supp. 2d at 871.

Review of Fifth Circuit authority clearly shows that there is no adverse employment action where an employee does not receive the raise that she feels she deserves. *See id.* at 366. Furthermore, simply because Schmelzer disagreed with Pierce's annual evaluations does not establish an adverse employment action. *Chiasson v. City of Thibodaux*, 347 F. Supp. 2d 300, at *12-13 (E.D. La. 2004). The other incidents Schmelzer cites as support for her claim also do not qualify. Criticism of an employee, or his work, does not constitute an adverse employment action. *See Harrington*, 118 F.3d 365; *Eason*, 1999 U.S. Dist. LEXIS 15214, at *13. Preventing Schmelzer from attending professional meetings or conferences does not establish an adverse employment action. *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998). Changing or altering

---

[12] Schmelzer must also establish that she suffered an adverse employment action by each individual defendant against whom she makes § 1983 retaliation charges. *Doe v. Eason*, 1999 U.S. Dist. LEXIS 15214, at * 12.

17

Schmelzer's teaching schedule does not constitute an adverse employment action.[13] *Marino v. Louisiana State Univ. Bd. of Supervisors*, CIVIL ACTION NO. 96-1689, 1998 U.S. Dist. LEXIS 13836, at *30 (E.D. La. 1998). Nor is the requirement that Schmelzer use a certain textbook for her classes an adverse employment action. *See Dorsett*, 940 F.2d at 123-24 (citing *Connick v. Myers*, 461 U.S. 138, 138-39 (1983)); *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220-21 (5th Cir. 1999) ("a federal court is not the appropriate forum in which to seek redress over faculty disputes concerning teaching assignments, room assignments, administrative duties, classroom equipment, teacher recognition, and a host of other relatively trivial matters") (quoting *Dorsett*, 940 F.2d at 123-24).

"Many actions which merely have a chilling effect upon protected speech are not actionable." *Goins*, 191 F. Supp. 2d at 871 (citing *Pierce*, 37 F.3d at 1149). Here, Schmelzer has failed to state any actions by the individual defendants that may form the basis of her retaliation claim. "[W]hile the Court does not doubt that the actions [Schmelzer] complains [of] had a potential chilling effect on her speech activities, such activities simply do not constitute actionable adverse employment actions, as a matter

---

[13] The Court notes that transferring an employee to a different campus would likely constitute an adverse employment action. *Harris*, 168 F.3d at 220-21. The record here, however, reflects that most of the issues between Schmelzer and the individual defendants were regarding the scheduling of her classes, either the time that they were offered or the subjects that she would be teaching. Only in one instance was Schmelzer told to teach a class at a separate campus. Because this was not a permanent transfer, the Court does not construe this instance to be an adverse employment action.

18

of law." *Id.* Because there are no factual allegations indicating that Schmelzer suffered an adverse employment action, and since Schmelzer must have suffered an adverse employment action to proceed on her § 1983 claims, the Court concludes that there is no genuine issue of material fact concerning her entitlement to relief on her § 1983 claims. Consequently, the Court concludes that the individual defendants are entitled to qualified immunity,[14] and that summary judgment for the individual defendants should be granted.

### III. CONCLUSION

Therefore, it is ORDERED that Defendants' Motion for Summary Judgment [doc. # 55-1] is GRANTED. The individual defendants are hereby awarded summary judgment against Plaintiff on all of her claims against them. Tarleton State is also hereby awarded summary judgment as to Schmelzer's claims arising prior to November 18, 2000.

SIGNED March 29, 2005.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

TRM/kat

---

[14] This finding is only concerning the individual defendants whose actions after November 18, 2000, formed the basis of Schmelzer's claims. The Court makes no finding regarding whether the defendants who are being granted summary judgment based on their assertion of the statute of limitations (Howard Graves, Gary Peer, Christopher Guthrie, Lamar Johanson, or Rueben Walter) also would be entitled to qualified immunity were such an inquiry to take place.